**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 08-cv-01848-REB

CAROLEE C. LAUGHTON,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#3], filed August 28, 2008, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that she is disabled as a result of a seizure disorder, an adjustment disorder which impairs her memory and concentration, and degenerative changes of her lumbar and cervical spine. After her application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on February 7, 2007. At the time of the hearing, plaintiff was 57 years old. She has a college degree and past relevant work experience as an administrative assistant, clerical worker, and sales clerk. Although she has performed

some remunerative work since her alleged date of onset, she has not engaged in substantial gainful activity since April 26, 2004.

The ALJ found that plaintiff was not disabled and, therefore, not entitled to disability insurance benefits. Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform medium work with some physical limitations and that required the ability understand, remember, and carry out one- or two-step instructions and to make work-related decisions only rarely. Although these findings precluded plaintiff's past relevant work, the ALJ concluded that there were jobs existing in significant numbers in the local and national economies that she could perform. He, therefore, found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the

claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Secretary of Health & Human Services*, 933

F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff argues that the ALJ's residual functional capacity assessment is not supported by substantial evidence. She also maintains that the Commissioner failed to sustain his burden of demonstrating that the alternative jobs identified at step five of the sequential evaluation process exist in significant numbers in the local and national economies. I find none of these contentions to have merit, and, therefore, affirm.

The ALJ found that mentally, plaintiff had the residual functional capacity to perform jobs that require no more than one- or two-step instructions. He also concluded that plaintiff could make simple work-related decisions no more than 1 to 5 percent of

4

the workday. (Tr. 26.)[1] Plaintiff notes that each of the alternative jobs found by the ALJ to be consistent with this residual functional capacity assessment has a "reasoning level"[2] of 2 as rated by the Scale of General Education Development set forth in the *Dictionary of Occupational Titles* ("*DOT*"). **See Dictionary of Occupational Titles**, **Appendix C: Components of the Definition Trailer** § III (General Educational Development) (*available at* http://www.occupationalinfo.org/appendxc_1.html) (last accessed July 29, 2009). As such, these jobs require the individual to be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[, and] [d]eal with problems involving a few concrete variables in or from standardized situations." ***Id.*** Plaintiff contends that this level of mental ability is incompatible with plaintiff's mental residual functional capacity as found by the ALJ.

The testimony of the vocational expert at the administrative hearing directly

---

[1] Plaintiff also faults the ALJ for failing to apply the Commissioner's psychiatric review techniques in evaluating her mental impairments. ***See*** 20 C.F.R. § 404.1520a. The psychiatric review techniques are used to determine whether a claimant's mental impairments are "severe" at step two of the sequential evaluation process. ***Id.*** As the ALJ found that plaintiff's mental impairments were severe, any error in this regard was clearly harmless.

[2] The *Dictionary of Occupational Titles* classifies jobs according to a number of different variables, including reasoning level, which together with considerations of mathematical complexity and language ability, is grouped under the heading of "General Educational Development":

> "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study. The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development."

**Dictionary of Occupational Titles**, *Appendix C: Components of the Definition Trailer* § III (General Educational Development) (*available at* http://www.occupationalinfo.org/appendxc_1.html) (last accessed July 29, 2009).

undermines this argument.[3]  The ALJ specifically asked the vocational expert to assume an individual capable of understanding, remembering, and carrying out only one- to two-step instructions and of making simple work-related decisions no more than 1 to 5 percent of the workday.  The vocational expert testified that such an individual would be able to perform the jobs ultimately found by the ALJ to be within plaintiff's residual functional capacity.  (*See* Tr. 343, 52-54.)

Plaintiff maintains that the ALJ was required to delve further and explore the apparent conflict between plaintiff's mental abilities and the *DOT* definitions.  The ALJ clearly has an affirmative duty to inquire of the vocational expert whether his testimony conflicts with the information provided in the *DOT*.  **See Social Security Ruling 00-4p**, 2000 WL 1898704 at *4 (SSA Dec. 4, 2000); *see also Cooper v. Barnhart*, 2004 WL 2381515 at *4 (N.D. Okla. Oct. 15, 2004).  The ALJ here did so inquire, and the vocational expert confirmed that no conflict existed.  (Tr. 343.)  Plaintiff's counsel did not raise this issue during the hearing, and this is not an instance in which the alleged conflict was so "obvious . . . that the ALJ should have picked up on [it] without any assistance."  *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008).  The ALJ, therefore, was entitled to rely on the vocational expert's testimony, which constitutes substantial evidence in support of his decision.[4]  **See Martin v. Commissioner of Social Security**, 170 Fed. Appx. 369, 374 (6th Cir. 2006) ("Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses

---

[3] Plaintiff also points out that two of the jobs have a mathematical development level of 2, and one of them has a language development level of 2.  She claims that the skills contemplated by these designations are beyond the mental residual functional capacity found by the ALJ as well.  The vocational expert's testimony contradicts these arguments as well.

[4] The vocational expert's testimony also undercuts plaintiff's further argument that there is *no* competitive work in the national or local economy that she can perform consistent with the residual functional capacity found by the ALJ.

6

to determine if they are correct.").

Plaintiff also argues that the ALJ failed to articulate what weight he gave to the opinions of the various medical sources in assessing plaintiff's her residual functional capacity. Although this observation is accurate, plaintiff fails to describe what, if any, prejudice she suffered as a result of the omission. *See Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988). The ALJ thoroughly, indeed exhaustively, recounted the medical evidence from plaintiff's treating neurologist, Dr. Richard P. Foa. It is clear from his discussion and ultimate determination of plaintiff's residual functional capacity that he credited Dr. Foa's clinical findings and observations regarding plaintiff's medical conditions. It is also clear that the ALJ credited plaintiff's contention, as recounted to the evaluating psychologist, Dr. Robert Chinisci, that she had a history of back pain, despite the fact that there was little objective evidence of such condition in the record and no indication that plaintiff had regularly sought treatment for them. Remand is not warranted simply to require the ALJ to expressly state what is abundantly apparent from the record, especially not when plaintiff fails to demonstrate that doing so might produce a different outcome.

Finally, plaintiff argues that the alternative jobs identified by the Commissioner do not exist in sufficient numbers in the local and national economies to be considered significant. I disagree. The Tenth Circuit has declined to adopt a bright line rule regarding what number of jobs may be considered "significant," finding that "[t]he decision should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (citation and internal quotation marks omitted). Of the three alternative jobs the vocational expert identified, there were more than 3,700

jobs in Colorado and more than 244,000 nationally.  (**See** Tr. 342.)[5]  **See also Stokes v. Astrue**, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (aggregating total numbers across two jobs identified by vocational expert).  This testimony supported the ALJ's conclusion that alternative jobs existed in significant numbers.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated July 30, 2009, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

---

[5] The vocational expert testified that the following jobs were within the hypothetical residual functional capacity posited by the ALJ: (1) clerical office helper: 2,462 jobs in Colorado; 161,196 jobs nationally; (2) media cutter and paster: 813 jobs in Colorado; 59,822 jobs nationally; and (3) addresser: 264 jobs in Colorado; 23,644 jobs nationally.  (Tr. 342.)